

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 1 2 2008

CLERK, U.S. DISTRICT COURT
By _____
                Deputy

| | |
|---|---|
| CABLE ELECTRONICS, INC. | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| NORTH AMERICAN CABLE | § |
| EQUIPMENT, INC., | § |
| | § |
| AARON STARR D/B/A | § |
| CABLETRONIX, and | § |
| | § |
| LAWRENCE RUFO D/B/A | § |
| CABLETRONIX, | § |
| | § |
| **Defendants.** | § |

CIVIL ACTION NO._____

# 3-08CV0433-M

20065

## COMPLAINT

Cable Electronics, Inc. (hereinafter "Cable Electronics") files the following Complaint

against Defendants North American Cable Equipment, Inc., Aaron Starr d/b/a Cabletronix and

Lawrence Rufo d/b/a Cabletronix (collectively "Defendants") and would respectfully show the

Court the following:

### The Parties

1.      Plaintiff Cable Electronics is a corporation organized and existing under the laws

of the State of Texas and has its principal place of business at 3209 Wood Drive, Garland,

Texas 75041.

2.      Defendant North American Cable Equipment, Inc. (hereinafter "North

American") is believed to be a corporation organized and existing under the laws of the State of

Pennsylvania and has its principal place of business at 1085 Andrew Drive, Suite A, West Chester, Pennsylvania 19380.

3.      Defendant Aaron Starr (hereinafter "Starr") is believed to be an individual doing business as Cabletronix and having an address of 1085 Andrew Drive, Suite A, West Chester, Pennsylvania 19380.

4.      Defendant Lawrence Rufo (hereinafter "Rufo") is believed to be an individual doing business as Cabletronix and having an address of 1085 Andrew Drive, Suite A, West Chester, Pennsylvania 19380.

### Jurisdiction and Venue

5.      This Court has original subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) because this case arises under the Trademark Act of 1946, *as amended*, 15 U.S.C. § 1051 *et seq.*

6.      This Court also has original jurisdiction over the unfair competition claims herein, under the provisions of 28 U.S.C. § 1338(b), because these claims are joined with substantial and related claims under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*

7.      This Court has supplemental jurisdiction over the claims in this Complaint which arise under the common law of the State of Texas pursuant to 28 U.S.C. § 1367(a) since the State law claims are so related to the Federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

8.      Venue as to Defendant North American lies properly in this judicial District and Division under the terms of 28 U.S.C. §§ 1391(b) and (c) because Defendant North American is deemed to reside in this District since it is subject to personal jurisdiction of this Court at the

time this suit was filed and because the claims and causes of action arose through acts of

Defendant North American committed in this District and Division.

9.      Venue as to Defendants Starr and Rufo also lies properly in this judicial District

and Division under the terms of 28 U.S.C. §§ 1391(b) because Defendants Starr and Rufo are

deemed to reside in this District since they are subject to personal jurisdiction of this Court at

the time this suit was filed and because the claims and causes of action arose through acts of

Defendants Starr and Rufo committed in this District and Division.

10.     Personal jurisdiction is proper in this Court over all Defendants. Upon

information and belief, all Defendants regularly sell products to numerous customers within this

district, and have also sold infringing products to customers within this District and Division.

### Factual Allegations Common to All Counts

11.     This Complaint includes allegations relating to trade dress infringement and unfair

competition.

12.     For many years Cable Electronics has been a premier designer and manufacturer of

audio and video products (collectively "the Cable Electronics Products"). The Cable Electronics

Products are electronic components which include originally designed electronic circuits and

circuit boards. The Cable Electronics Products include, but are not limited to model numbers

"AV901 HD", AV-400", "CAT 5 HDTV Transmitter" and "CAT 5 HDTV Receiver". The

design and testing of the products has required Cable Electronics to expend substantial time,

money and effort to ensure that each product achieves its desired function.

13.     The Cable Electronics Products have a distinctive appearance (the "Cable

Electronics Trade Dress"). The distinctive appearance includes the type of enclosure box for each

product, the arrangement of the external components and the colors and graphics on the enclosure

box. Cable Electronics has expended a great amount of time, money and effort to develop the distinctive and successful appearance of its products.

14.     Moreover, substantial time, money and effort have been expended by Cable Electronics to compile the specifications for its products. Most of the specifications for the Cable Electronics Products are the result of extensive testing by Cable Electronics and are not merely industry standards. The specifications for the products are included in the instruction manuals shipped with the products.

15.     In addition, Cable Electronics has expended substantial time, money and effort to develop confidential information related to the audio and video industry related to its products (the "Cable Electronics Confidential Information"). The Cable Electronics Confidential Information includes but is not limited to its customer identities, pricing and profit information and market trends in the industry related to product sales. The confidential information has given Cable Electronics a significant commercial advantage over all competitors in the industry.

16.     Long before Defendants began their infringing activities and at least since January of 2004, Cable Electronics has marketed products using its unique and distinctive trade dress.

17.     Cable Electronics sells its products directly and through distributors. Hundreds of thousands of products have been sold throughout Texas and the United States under the Cable Electronics Trade Dress totaling sales in the tens of millions of dollars.

18.     Growth and continuation of Cable Electronics' business depends in part upon the unique and distinctive nature of the Cable Electronics Trade Dress and on the good reputation and goodwill symbolized thereby.

19.     The high quality of products offered for sale by Cable Electronics under the Cable Electronics Trade Dress has also contributed to its success and good reputation. Since the first

use of the Cable Electronics Trade Dress, Cable Electronics has expended substantial energy, time, money and effort in advertising its goods sold in association with this trade dress. Cable Electronics advertises and sells its products under its trade dress in many different ways, such as on the Internet, in printed brochures, catalogs and magazines and at numerous trade shows. Over the years, Cable Electronics has expended over a million dollars to advertise its products under its trade dress throughout Texas and the United States.

20.     As a result of the distinctiveness or acquired distinctiveness of the Cable Electronics Trade Dress, the public recognizes Cable Electronics as the source of origin for audio and video products that are offered for sale under the Cable Electronics Trade Dress.

21.     Defendants are distributors for and competitors of Cable Electronics in the audio and video products industry. Defendant Starr is the President of Defendant North American. Defendant Rufo is the Vice President of Defendant North American. Defendant North American distributes the audio and video products of others, including those of Defendants Starr and Rufo and those of Cable Electronics. As the President and Vice President of Defendant North American, Defendants Starr and Rufo actively participate in all of Defendant North American's business activities and decisions. As such, Defendants Starr and Rufo are personally liable and responsible for Defendant North American's activities as alleged in this Complaint. On information and belief, Defendants manufacture, distribute and/or import audio and video products and resell these products to consumers throughout the United States.

22.     Defendants have sold and continue to sell audio and video products, namely, amplifiers, distribution hubs and receivers, which are disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress ("Defendants' Infringing Trade Dress"). On information and belief, in late 2007, Defendants began offering for sale products, namely, "CT-

COMPLAINT
20615.0108

5

9X1HD", "CT-400", "CT-CATTX" and "CT-CATRX" (collectively "Defendants'
Infringing Products"). On information and belief, Defendants' Infringing Products are of
inferior quality to the Cable Electronics Products.

23.     Defendants' Infringing Trade Dress is used in association with audio and video
products, namely, amplifiers, distribution hubs and receivers. These types of products are
nearly identical to those offered by Cable Electronics under the trade dress. As a result, the
customers and the target market for goods sold by Cable Electronics and Defendants are
identical or nearly identical.

24.     The advertising media used by Cable Electronics and the advertising media used by
Defendants are very similar. For example, both Defendants and Cable Electronics advertise
their goods under their respective marks on the internet, at trade shows and through printed
literature.

25.     Defendants' actions of using the Cable Electronics Trade Dress to sell, offer for
sale, distribute and advertise audio and video products to consumers throughout Texas and the
United States is likely to cause confusion and to cause mistake or to deceive consumers as to the
source of origin of Defendants' Infringing Products.

26.     Cable Electronics has notified Defendants that their actions constitute trade dress
infringement. Yet, Defendants have continued to use Defendants' Infringing Trade Dress.
Therefore, Defendants' actions are intentional and have been undertaken with full knowledge of
Cable Electronics' rights in and to the Cable Electronics Trade Dress.

27.     As a distributor of the Cable Electronics Products, Defendant North American has
had the opportunity to view and inspect each of the Cable Electronics Products and the
information associated therewith. The original circuit boards that are included in each of the

Cable Electronics Products can easily be inspected by merely disassembling each product enclosure.

28.    Defendants' Infringing Products are almost exact replicas of the Cable Electronics Products. For example, the circuit board layouts and component values in Defendants' Infringing Products are nearly identical to those in the Cable Electronics Products. An example of the circuit board for one of the Cable Electronics Products is shown below:



"AV400"

An example of the circuit board for one of Defendants' Infringing Products is shown below:



"CT-400"

The selection and configuration of the electrical components and connections of Defendants' "CT-400" product is almost identical to Cable Electronics' "AV400" product. The circuit board layouts and components used in the other of Defendants' Infringing Products are also nearly

identical to the circuit board layouts and components for the other Cable Electronics Products.

29.     Instead of expending their own time, labor, skill and money to design Defendants' Infringing Products, Defendants have merely mimicked the original designs of each of the Cable Electronics Products.  Defendants have usurped the time, labor, skill and money that Cable Electronics has expended to choose and design its products and their appearance.  By these actions, Defendants have misappropriated the "sweat equity" that Cable Electronics has gained through the design of the Cable Electronics Products.

30.     On information and belief, Defendants have also used the Cable Electronics Confidential Information to gain a competitive advantage without the expenditure of any significant resources.  As a distributor, Defendants have had access to the Cable Electronics Confidential Information regarding the Cable Electronics Products.  Defendants incurred little or no expense in deriving the confidential information.  Defendants used the confidential information to, among other things, select which of the Cable Electronics Products to mimic and how to price Defendants' Infringing Products.

31.     Moreover, Defendants have had access to and have misused the identities of Cable Electronics' customers.  On information and belief, when customers call Defendants to inquire about the Cable Electronics Products, Defendants systematically and intentionally redirect those customers to purchase Defendants' Infringing Products instead of the Cable Electronics Products.

32.     The actions of Defendants constitute acts of trade dress infringement and unfair competition and have resulted and will continue to result in damage and irreparable harm to Cable Electronics.  Cable Electronics seeks full recovery of these damages as well as temporary,

preliminary and permanent injunctive relief to restrain Defendants from further acts of trade dress infringement and unfair competition.

<u>**Count I**</u>
<u>**Federal Trade Dress Infringement**</u>
*(15 U.S.C. § 1125(a)(1)(A))*

33.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 32 as if fully set forth herein.

34.     For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade Dress.  The trade dress has a distinctive overall appearance of the products.  An example of a product bearing the Cable Electronics Trade Dress is shown below:



"AV901 HD"

35.     Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

36.     Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised

under the Cable Electronics Trade Dress. As a result, products sold under the Cable Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

37.    The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

38.    The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

39.    Defendants have sold, and continue to sell, products, namely, an amplifier, that has been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress. A picture of Defendants' Infringing Trade Dress that is sold under the model number "CT-9X1HD" is shown below:



"CT-9X1HD"

40.     Defendants' actions are in violation of 15 U.S.C. § 1125(a)(1)(A) because Defendants have, on or in connection with any goods and services, namely audio and video products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of Defendants with Cable Electronics as to the source, origin, sponsorship or approval of Defendants' goods, services or commercial activities.

41.     Defendants' adoption and use of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

42.     Defendants' use of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of Defendants' audio and video products.  Defendants' audio and video products are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics.  Defendants' audio and video products that are sold under the infringing trade dress directly compete with products of Cable Electronics.

43.     On information and belief, Defendants adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Defendants' use of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

44.     Such acts of Defendants, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law.

**Count II**
**Federal Trade Dress Infringement**
*(15 U.S.C. § 1125(a)(1)(A))*

45.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 44 as if fully set forth herein.

46.     For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade Dress.  The trade dress has a distinctive overall appearance of the products.  An example of a product bearing the Cable Electronics Trade Dress is shown below:



"AV400"

47.     Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

48.     Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised under the Cable Electronics Trade Dress.  As a result, products sold under the Cable Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

49.     The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

50.     The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

51.     Defendants have sold, and continue to sell, products, namely, an amplifier, that has been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.  A picture of Defendants' Infringing Trade Dress that is sold under the model number "CT-400" is shown below:



"CT-400"

52.     Defendants' actions are in violation of 15 U.S.C. § 1125(a)(1)(A) because Defendants have, on or in connection with any goods and services, namely audio and video products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of Defendants with Cable Electronics as to the source, origin, sponsorship or approval of Defendants' goods, services or commercial activities.

53.     Defendants' adoption and use of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

54.     Defendants' use of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of Defendants' audio and video products.  Defendants' audio and video products are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics.  Defendants' audio and video products that are sold under the infringing trade dress directly compete with products of Cable Electronics.

55.     On information and belief, Defendants adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Defendants' use of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

56.     Such acts of Defendants, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law.

## Count III
## Federal Trade Dress Infringement
*(15 U.S.C. § 1125(a)(1)(A))*

57.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 56 as if fully set forth herein.

58.     For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade

Dress.  The trade dress has a distinctive overall appearance of the products.  An example of a product bearing the Cable Electronics Trade Dress is shown below:



"CAT 5 HDTV Transmitter"

59.     Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

60.     Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised under the Cable Electronics Trade Dress.  As a result, products sold under the Cable Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

61.     The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

62.     The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

63.     Defendants have sold, and continue to sell, products, namely, a transmitter, that has been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.  A picture of Defendants' Infringing Trade Dress that is sold under the model number "CT-CATTX" is shown below:



"CT-CATTX"

64.     Defendants' actions are in violation of 15 U.S.C. § 1125(a)(1)(A) because Defendants have, on or in connection with any goods and services, namely audio and video products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of Defendants with Cable Electronics as to the source, origin, sponsorship or approval of Defendants' goods, services or commercial activities.

65.     Defendants' adoption and use of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

66.     Defendants' use of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of Defendants' audio and video products.  Defendants' audio and video products are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics.

Defendants' audio and video products that are sold under the infringing trade dress directly compete with products of Cable Electronics.

67.     On information and belief, Defendants adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress. Defendants' use of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

68.     Such acts of Defendants, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law.

## Count IV
### Federal Trade Dress Infringement
*(15 U.S.C. § 1125(a)(1)(A))*

69.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 68 as if fully set forth herein.

70.     For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade Dress. The trade dress has a distinctive overall appearance of the products. An example of a product bearing the Cable Electronics Trade Dress is shown below:



"CAT 5 HDTV Receiver"

71.     Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

72.     Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised under the Cable Electronics Trade Dress.  As a result, products sold under the Cable Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

73.     The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

74.     The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

75.     Defendants have sold, and continue to sell, products, namely, a receiver, that has been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.

A picture of Defendants' Infringing Trade Dress that is sold under the model number "CT-9X1HD" is shown below:



"CT-CATRX"

76.     Defendants' actions are in violation of 15 U.S.C. § 1125(a)(1)(A) because Defendants have, on or in connection with any goods and services, namely audio and video products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of Defendants with Cable Electronics as to the source, origin, sponsorship or approval of Defendants' goods, services or commercial activities.

77.     Defendants' adoption and use of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

78.     Defendants' use of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of Defendants' audio and video products.  Defendants' audio and video products are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics. Defendants' audio and video products that are sold under the infringing trade dress directly compete with products of Cable Electronics.

79.     On information and belief, Defendants adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Defendants' use of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

80.     Such acts of Defendants, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law.

## Count V
## Texas Common Law Unfair Competition – Trade Dress Infringement

81.     Cable Electronics repeats and realleges the allegations in Paragraphs 1 through 80 as if fully set forth herein.

82.     The acts of Defendants complained of herein constitute unfair competition under the laws of the State of Texas.  Cable Electronics has taken numerous actions in order distinguish its products from those of others.  Specifically, Cable Electronics has adopted and continuously used the Cable Electronics Trade Dress in association with audio and video products in order to identify Cable Electronics as a sole source of origin of goods offered by Cable Electronics or under its surveillance and authority and distinguishes those goods from many others.

83.     Subsequent to the adoption and use of the Cable Electronics Trade Dress by Cable Electronics, Defendants began infringing the Cable Electronics Trade Dress by advertising and selling audio and video products which are confusingly similar to the Cable Electronics Trade Dress, throughout this judicial district and the United States.

84.     Such conduct by Defendants represents unfair competition because it is designed to and has caused confusion and mistake and deception of purchasers into believing that Defendants' goods are somehow sponsored by, made by or associated with Cable Electronics. The conduct further has caused damage to the reputation of Cable Electronics.

85.     On information and belief, Defendants have attempted to and have passed off goods of Defendants as those of Cable Electronics by using the Cable Electronics Trade Dress in association to offer for sale audio and video products to the exact same target markets and customers as those of Cable Electronics.

86.     Defendants' acts of unfair competition are fraudulent, deliberate, willful and malicious because Defendants were aware of Cable Electronics' adoption and use of the Cable Electronics Trade Dress before they began selling their own products and have been committed with the intent to cause injury to Cable Electronics.

87.     Unless Defendants are restrained from the acts complained of, Cable Electronics and the public will suffer irreparable harm, for which Cable Electronics has no adequate remedy at law.

## Count VI
## Unfair Competition - Misappropriation

88.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 87 as if fully set forth herein.

89.     Cable Electronics has expended extensive time, labor, skill and money to create each of the Cable Electronics Products. Each of the Cable Electronics Products has been designed and tested exclusively by Cable Electronics. Moreover, each of the Cable Electronics Products bears a unique trade dress. As a result of Cable Electronics' efforts, it has created high quality products which now enjoy an excellent reputation in the industry. Additionally, Cable

Electronics has expended extensive time, labor, skill and money to study the audio and video products industry to analyze consumer demand to determine which products to offer for sale and at what prices.

90.     Defendants are distributors for and competitors of Cable Electronics in the audio and video products industry.  Defendant North American is a distributor of both the Cable Electronics Products and Defendants' Infringing Products.  On information and belief, Defendants have usurped the time, labor, skill and money that Cable Electronics incurred to create and test the Cable Electronics Products by making products, namely, Defendants' Infringing Products, that are almost exact replicas of the Cable Electronics Products.  On information and belief, instead of expending the time, labor, skill and money to design and test their own products, Defendants merely mimicked the design and appearance of the Cable Electronics Products and the product specifications included in the manuals from the products.

91.     Defendants have used the Cable Electronics Confidential Information to mimic the Cable Electronics Products and choose which products to mimic.  Defendants further used the Cable Electronics Confidential Information to identify and solicit customers of Cable Electronics by advertising the Cable Electronics Products as "bait" only to "switch" the customers to their own infringing products sold at a lower price.  Defendants' conduct has provided them with an unfair competitive advantage of allowing Defendants to offer for sale products that are in high demand and that directly compete with the Cable Electronics Products at lower prices than Cable Electronics because Defendants have not incurred the expenses incurred by Cable Electronics in developing the confidential information.

92.     On information and belief, Defendants' Infringing Products are of inferior quality. Sales of Defendants' Infringing Products by Defendants in place of the Cable Electronics Products have therefore caused irreparable harm to Cable Electronics' reputation and goodwill.

93.     Defendants' conduct has also caused Cable Electronics to suffer substantial commercial damage.

94.     Unless Defendants are restrained from the acts complained of, Cable Electronics and the public will suffer further damage and irreparable harm, for which Cable Electronics has no adequate remedy at law.

### Demand for Jury Trial

95.     Pursuant to Rule 38(b), Fed. R. Civ. P., Cable Electronics demands a jury trial on all issues so triable.

### Prayer

WHEREFORE, Cable Electronics respectfully requests:

a.      That, pursuant to 15 U.S.C. § 1116 Defendants, together with their subsidiaries and affiliates, agents, servants and employees and all those in privy, concert or participation with them, be immediately, preliminary and perpetually enjoined from:

(1)     Using Defendants' Infringing Trade Dress, or any other reproduction, counterfeit, copy or colorable imitation of the Cable Electronics Trade Dress in connection with the advertising, offering for sale, or sale of goods the same or similar to those offered by Cable Electronics;

(2)     Using Defendants' Infringing Trade Dress, or any other reproduction, counterfeit, copy or colorable imitation of the Cable Electronics Trade Dress in any manner likely to cause confusion, to cause mistake or to deceive;

(3)     Selling or passing off, inducing, or enabling others to sell or pass off any goods used in the audio and video industry and other related industries or any other goods similar to those offered by Cable Electronics;

(4)     Committing any acts, including, but not limited to marketing activities, which are calculated to cause purchasers to believe that Defendants' goods are Cable Electronics' goods in whole or in part unless they are entirely such;

(5)     Otherwise competing unfairly with Cable Electronics in any manner, including, but not limited to, infringing usage of the Cable Electronics Trade Dress;

(6)     Selling, offering for sale, manufacturing or importing any of Defendants' Infringing Products replicated from any of the Cable Electronics Products;

(7)     Destroying, altering, disposing of, concealing, tampering with or in any manner secreting any and all business records, invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the design, production, advertising, sale or offer for sale of any goods bearing Defendants' Infringing Trade Dress and all other dress that is confusingly similar to the Cable Electronics Trade Dress;

(8)     from attempting, causing or assisting in any of the above-described acts to occur.

b.      That, pursuant to 15 U.S.C. § 1118, after final hearing Defendants are required to deliver up for destruction or, alternatively, to obliterate all infringing trade dress on, their entire inventory of infringing items, including but not limited to products, signs, labels, packaging, advertisements, video and audio recordings, computer graphics files, internet web page files, literature, correspondence, invoices, catalogs, molds and matrices and any other material in their position bearing Defendants' Infringing Trade Dress or any other dress confusingly similar to the Cable Electronics Trade Dress;

c.      That Defendants are required to contact each person who has purchased from them any infringing goods under Defendants' Infringing Trade Dress and notify that person that the goods were not genuine goods offered by Cable Electronics or under its surveillance or control;

      d.      That Defendants be required to contact each person who has received any of the infringing goods under Defendants' Infringing Trade Dress and notify that person that the goods are not associated with or offered for distribution by Cable Electronics or under its surveillance or control;

      e.      That Defendants be required to file with the Court and serve on Cable Electronics within thirty (30) days after service on Defendants of such injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

      f.      That upon ten (10) days after notice, for the next five years, Cable Electronics be permitted to inspect and audit Defendants' inventory and all business records to determine compliance with the injunction issued by the Court;

      g.      That, pursuant to 15 U.S.C. § 1117, the Court hold that this is an exceptional case and award Cable Electronics its attorneys' fees, Defendants' Profits, damages sustained by Cable Electronics and its costs;

      h.      That Cable Electronics be awarded monetary damages as a result of Defendants' engagement in unfair competition.

      i.      That Defendants be required to pay Cable Electronics prejudgment interest on the amount awarded and post judgment interest until paid, all at the maximum lawful rate;

      j.      That Cable Electronics be awarded its costs; and

      k.      That Cable Electronics have such other and further relief as the Court deems just and proper.

Dated:  March 11, 2008.                  Respectfully submitted,

George R. Schultz
Texas State Bar No. 17837500
russ.schultz@grspc.com
William D. Harris, Jr.
Texas State Bar No. 09109000
bill.harris@grspc.com


SCHULTZ & ASSOCIATES, P.C.
5400 LBJ Freeway, Suite 1200
Dallas, Texas 75240
(214) 210-5940 telephone
(214) 210-5941 facsimile

ATTORNEYS FOR PLAINTIFF
CABLE ELECTRONICS, INC

JS 44 (Rev. 12/07)   ~~ORIGINAL~~   **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

CABLE ELECTRONICS, INC.

**DEFENDANTS**

North American Cable Equipment, Inc., Aaron Starr d/b/a Cabletronix and Lawrence Rufo d/b/a Cabletronix

**(b)** County of Residence of First Listed Plaintiff   Dallas County
(EXCEPT IN U.S. PLAINTIFF CASES)

RECEIVED
MAR 1 2 2008
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

County of Residence of First Listed Defendant   Chester County, PA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Schultz & Associates, P.C., 5400 LBJ Freeway, Suite 1200, Dallas,
TX 75240

Attorneys (If Known)   3-08CV0433-M

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):   15 U.S.C. § 1051 et.

Brief description of cause:   Trade Dress Intringement and Unfair Competition

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   03/11/2008

SIGNATURE OF ATTORNEY OF RECORD   George R. Schultz

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____