**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CABLE ELECTRONICS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| NORTH AMERICAN CABLE | § | |
| EQUIPMENT, INC., | § | |
| | § | CIVIL ACTION NO. 3:08-CV-0433-M |
| AARON STARR, D/B/A | § | |
| CABLETRONIX, | § | |
| | § | |
| LAWRENCE RUFO, D/B/A | § | |
| CABLETRONIX, and | § | |
| | § | |
| BLUE WHALE LIMITED, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Cable Electronics Inc.'s Motion for Extension of Time to Conduct Discovery [Docket Entry #61].  The Motion is **GRANTED**.[1]

*Background*

Plaintiff Cable Electronics, Inc. ("Cable Electronics"), a Texas corporation, designs and manufactures audio and video products.  At issue in this case are products that transmit video signals to monitors displaying advertisements in retail stores.  Defendant North American Cable Equipment, Inc. ("NACE"), a Pennsylvania corporation, distributes Cable Electronics' products and sells products obtained from other sources.  Cable Electronics alleges that NACE has begun selling products that closely resemble those made by Cable Electronics, thereby violating a

---

[1] This Memorandum Opinion and Order amends the final sentence of the Court's Memorandum Opinion and Order of August 4, 2008, and is otherwise unchanged.

1

federal trade dress statute.[2]  Cable Electronics claims that NACE contracted with Blue Whale

Limited ("Blue Whale"), a Hong Kong company, to supply the allegedly infringing products to

NACE, for ultimate sale in the United States.  On March 3, 2008, Cable Electronics filed suit

against NACE and its officers, Aaron Starr and Lawrence Rufo, alleging trade dress violations,

unfair competition, and misappropriation of Cable Electronics' confidential information.  On

April 4, 2009, Cable Electronics amended its Complaint to include a conspiracy claim and to add

Blue Whale as a defendant.  On April 7, 2009, Blue Whale moved to dismiss the claims against

it, arguing the Court lacks personal jurisdiction over it.  Cable Electronics has asked the Court

for permission to conduct discovery with respect to the jurisdictional issue, and to allow it to

respond to the Motion to Dismiss once that discovery is completed.

*Legal Standard*

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident

defendant if the long-arm statute of the forum confers personal jurisdiction over that defendant,

and the exercise of such jurisdiction by the forum is consistent with due process.[3]  The Texas

long-arm statute reaches to the limits of due process, and therefore a court need only determine

whether the exercise of personal jurisdiction over the moving defendant is consistent with due

process.[4]  The due process clause permits the exercise of personal jurisdiction over a nonresident

defendant when (1) that defendant has purposefully availed itself of the benefits and protections

of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise

---

[2] 15 U.S.C. § 1125(a)(1)(A).
[3] *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999); *Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990)).
[4] *Guardian Royal Exch. Assur., Ltd. v. English China Clays P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."[5]

When personal jurisdiction is challenged without an evidentiary hearing, the party seeking to invoke jurisdiction must make a *prima facie* showing of jurisdiction, with the Court resolving all disputed facts in favor of jurisdiction.[6] When determining whether the plaintiff has made a *prima facie* case, the Court may consider any affidavits, interrogatories, deposition testimony, or any other recognized discovery method,[7] not considering conclusory allegations.[8]

There are two categories of personal jurisdiction, general and specific. General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," allowing the Court to exercise jurisdiction over that defendant for causes of action unrelated to the defendant's connections to the state.[9] For specific jurisdiction to exist, the plaintiff's claim must arise out of or relate to those contacts.[10] In determining whether specific jurisdiction exists, the Court must conduct the minimum contacts analysis separately for each cause of action.[11] If a plaintiff can establish minimum contacts, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unfair.[12]

In this Circuit, when seeking discovery on personal jurisdiction, the plaintiff must make a "preliminary showing of jurisdiction" before being entitled to such discovery.[13] In *Fielding v. Hubert Burda Media, Inc.*, the Fifth Circuit cited with approval the Third Circuit's standard,

---

[5] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).
[6] *See Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).
[7] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).
[8] *Panda Brandywine*, 253 F.3d at 869.
[9] *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 336 (5th Cir. 1999); s*ee also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).
[10] *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).
[11] *Stelax Indus. Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *2 (N.D. Tex. Mar. 25, 2004) (Lynn, J.).
[12] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).
[13] *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).

articulated in *Toys "R" Us, Inc. v. Step Two, S.A.*, that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained."[14]  The decision to allow jurisdictional discovery is within the discretion of the district court.[15]

*Analysis*

Because the decision whether to allow jurisdictional discovery largely overlaps with the personal jurisdiction analysis, the Court will examine Blue Whale's jurisdictional contacts to determine whether Cable Electronics has made a preliminary showing of personal jurisdiction.

In support of its Motion to Dismiss, Blue Whale submitted a Declaration of Ng Yuet Seung, the Director of Blue Whale, who stated:

1. Blue Whale is a Hong Kong company that does not maintain any business offices outside of Hong Kong, does not have offices or sales representatives in the United States, and does not conduct business inside the United States.

2. Blue Whale contracts with companies in the United States who will sell products to customers in the United States, including Defendant NACE.

3. When Blue Whale sells products to a United States customer, it delivers such products to a shipping company hired and paid for by the customer and "free on board" Hong Kong,[16] and therefore does not ship products into the United States.

4. Blue Whale maintains a website on which it advertises its products, but Blue Whale does not take orders on that website.

5. NACE representatives approached Blue Whale representatives at the Hong Kong Electronics Fair, and the products at issue were not specifically designed for NACE.

6. Other than the products that are the subject of the lawsuit, the only products that Blue Whale has sold to a United States buyer are 100 pieces of equipment totaling $5,800, and Blue Whale has not sold any products to customers in the state of Texas.

---

[14] 318 F.3d 446, 456 (3d Cir.2003).

[15] *Fielding*, 415 F.3d at 419.

[16] "Free on board" is a term used in commercial shipping that denotes where financial liability for goods lost in transit will shift from the seller to the purchaser.  In this case, Blue Whale delivered products to a shipping company in Hong Kong, and the purchaser assumed liability for those products from the time of shipment.

Blue Whale also submitted a bill of lading that shows NACE's address in Pennsylvania and evidences that goods sold by Blue Whale to NACE were shipped to NACE's office in Missouri.

In the Motion seeking jurisdictional discovery, Cable Electronics argues that Blue Whale placed its products into the stream of commerce, selling products that "made their way to Dallas and Houston."  In support of its Motion, Cable Electronics submitted the Declaration of Ken Kaylor, its President, who states that "Defendants have sold significant numbers of products such as those at issue in Texas."[17]  Cable Electronics also argues that there are several inaccuracies in the Seung Declaration, and that Blue Whale's contacts with Texas are more substantial than Blue Whale contends.  Cable Electronics submits emails from Blue Whale to NACE, in which Blue Whale introduces itself as a Chinese manufacturer that produces audio video products, and offers to sell such products to NACE, which it describes as an "esteemed company . . . famous for dealing A/V products in [the] United States."[18]  Cable Electronics also submits several emails in which NACE representatives instruct Blue Whale representatives to affix NACE's identifying marks onto the allegedly infringing products.[19]  Cable Electronics also submits a bill of lading that indicates Blue Whale shipped products to PMI Trading, a Houston company, and an advertisement from Skywalker Communications, a Missouri distributor, which advertises products made by Blue Whale that Cable Electronics claims are copies of its products.[20]

---

[17] The Declaration does not specify which Defendant has sold products in Texas.

[18] Cable Electronics claims that the emails directly refute the statement in the Declaration of Ng Yuet Seung representing that NACE approached Blue Whale in Hong Kong.  The Court resolves this factual dispute in favor of Cable Electronics, as it must for the purposes of this Motion.

[19] Blue Whale admits affixing custom labels to the products, but disputes that this means that the products are "specially made."  The distinction is unimportant to the present analysis.

[20] The products sold by PMI Trading and Skywalker Communications are not the subject of this suit, and therefore would not be considered in a specific jurisdiction inquiry.  However, they are probative in the analysis regarding the discovery issue, because while conducting discovery, Cable Electronics will be better able to determine whether products reached Texas through the stream of commerce, and if so, how they reached Texas, and are also the possible basis for an argument of general jurisdiction.

In its Reply brief, Blue Whale acknowledges that the Seung Declaration contained several inaccuracies.  In a second Declaration, Seung admits that he may have been "mistaken" when he said that Blue Whale had not solicited sales from NACE through email communication initiated by Blue Whale.  He also admits that "Blue Whale has in fact shipped F.O.B. Hong Kong a number of products to purchasers who have United States addresses.  I mistakenly thought that the reference to "products" . . . was to Blue Whale products of the kind referenced in the Complaint . . . ."  The second Seung Declaration also admits shipping to PMI Trading 350 units of electronics with a total sales price of $4,025, and 100 pieces of a different type of electronics to Skywalker Communications, for $5,800.  There is no mention of how many Blue Whale products have been sold to United States buyers in the aggregate, or how many such products have arrived in Texas.

The Court construes Plaintiff's argument in support of its request for discovery as asserting that the Court may exercise personal jurisdiction under a "stream of commerce" theory based on specific jurisdiction, or that Blue Whale has engaged in sufficient general activity in Texas to support jurisdiction.  In *Luv N' care, Ltd. v. Insta-Mix, Inc.,*[21] the Fifth Circuit explained the circumstances under which placing a product into the stream of commerce can subject a party to jurisdiction in the forum where the products are eventually sold.  In *Luv N' care*, the plaintiff, a Louisiana corporation that manufactured baby bottles, sued its competitor, a Colorado corporation, alleging that the defendant had copied the design of the cap of one of the plaintiff's bottles.  The defendant distributed its bottles through an agreement with Wal-Mart, and pursuant to that agreement, Wal-Mart transported the bottles "free on board" from the defendant's dock in Colorado Springs to one of its twenty-six national distribution centers.  The vendor agreement between the defendant and Wal-Mart mentioned several possible distribution centers, none of

---

[21] 438 F.3d 465 (5th Cir. 2006).

which was in Louisiana. The defendant filled purchase orders from Wal-Mart via an "Electronic Data Interchange" system, which contained information regarding the price, quantity, and destination of each shipment. Sixty-five electronically generated invoices produced in discovery had a "send to" location of the Wal-Mart distribution center in Louisiana, and Wal-Mart transported 3,696 copies of the bottle to its Louisiana distribution center. For the bottles shipped to Louisiana, the defendant's revenue totaled $8,923.20.

The Fifth Circuit held that Louisiana could exercise personal jurisdiction over the litigation through a stream of commerce theory, requiring only "mere foreseeability" that a substantial number of products would eventually be purchased by consumers in the forum state. The court noted that the defendant derived 4.5% of its total revenue from the ultimate sale of its products sent to Louisiana.[22] The court also specifically rejected the argument that jurisdiction was lacking because title passed "free on board" to Wal-Mart in Colorado Springs; it stated that jurisdiction "does not depend on the technicalities of when title passes," but rather, that it "may attach both to manufacturers who supply their own delivery systems and those that make use of the distribution systems of third parties."[23]

The Fifth Circuit regards the shipment of "substantial quantities" of a defendant's goods "directly" to the forum as sufficient to establish minimum contacts, even though those goods are shipped by a shipping company outside the defendant's control. In this case, based on the law in *Luv N' care* and the facts known to the Court, Plaintiff has made a preliminary showing of personal jurisdiction over Blue Whale. It was foreseeable that Blue Whale's products would be distributed throughout the United States, including Texas, and Blue Whale admits that it sold hundreds of products to United States distributors. There is no evidence that it sought to limit

---

[22] *Id*. at 471.
[23] *Id*.

7

the geographical reach of its products.[24]  In *Luv N' care*, goods were shipped from the
defendant's facilities to a distribution center within the forum state, which may or may not be
true in this case.  However, the Fifth Circuit has not foreclosed the possibility that personal
jurisdiction could exist even if no products were directly shipped to Texas, as it states broadly
that "[w]here a defendant knowingly benefits from the availability of a particular state's market
for its products, it is only fitting that the defendant be amenable to suit in that state."[25]  Cable
Electronics is entitled to conduct jurisdictional discovery to determine the extent of Blue
Whale's shipments of allegedly infringing products into the United States and how many were
sold in Texas.  If Cable Electronics demonstrates that Blue Whale shipped allegedly infringing
products it could reasonably foresee would arrive in Texas in substantial quantities, Blue Whale
would likely have minimum contacts with Texas under the law of this Circuit.[26]

Blue Whale's counsel has moved to withdraw, and given the timing in the Court's Order
on that Motion, all discovery may be scheduled so as to be completed by October 30, 2009.

**SO ORDERED**.

August 10, 2009.

BARBARA M. G. LYNN
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

---

[24] *See Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199-200 (5th Cir. 1980) (finding jurisdiction where defendant had "attempted in [no] way to limit the states in which the [products] could be sold" but instead "had every reason to believe its product would be sold to a nation-wide market, that is, in any or all states").
[25] *Id*. at 470.
[26] The Court does not address whether such an assertion would offend traditional notions of fair play and substantial justice, as the issue is not yet ripe.

8