**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CABLE ELECTRONICS, INC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.  3:08CV-0433-M** |
| | § | |
| **NORTH AMERICAN** | § | |
| **CABLE EQUIPMENT, INC.,** | § | |
| **AARON STARR D/B/A CABLETRONIX,** | § | |
| **LAWRENCE RUFO D/B/A** | § | |
| **CABLETRONIX, BLUE** | § | |
| **WHALE LIMITED, PMI TRADING,** | § | |
| **INC., and CALRAD ELECTRONICS, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## SECOND AMENDED COMPLAINT

Cable Electronics, Inc. (hereinafter "Cable Electronics") files the following Second

Amended Complaint against Defendants North American Cable Equipment, Inc., Aaron Starr

d/b/a Cabletronix, Lawrence Rufo d/b/a Cabletronix, Blue Whale Limited, PMI Trading, Inc.,

and Calrad Electronics, Inc. (collectively "Defendants") and would respectfully show the Court

the following:

### The Parties

1.      Plaintiff Cable Electronics is a corporation organized and existing under the laws

of the State of Texas and has its principal place of business at 3209 Wood Drive, Garland, Texas

75041.

2.      Defendant North American Cable Equipment, Inc. (hereinafter "North

American") is believed to be a corporation organized and existing under the laws of the State of

Pennsylvania and having a principal place of business at 1085 Andrew Drive, Suite A, West Chester, Pennsylvania 19380.

3.      Defendant Aaron Starr (hereinafter "Starr") is believed to be an individual doing business as Cabletronix and having an address of 1085 Andrew Drive, Suite A, West Chester, Pennsylvania 19380.

4.      Defendant Lawrence Rufo (hereinafter "Rufo") is believed to be an individual doing business as Cabletronix and having an address of 1085 Andrew Drive, Suite A, West Chester, Pennsylvania 19380.

5.      Defendant Blue Whale Limited (hereinafter "Blue Whale") is believed to be a corporation organized and existing under the laws of Hong Kong and having a principal place of business of Room 912, K. Wah Centre, 191 Java Road, North Point, Hong Kong.

6.      Defendant PMI Trading, Inc. (hereinafter "PMI") is believed to be a corporation organized and existing under the laws of State of Texas and having a principal place of business of 5803 Sovereign Dr., # 210, Houston, Texas 77036.

7.      Defendant Calrad Electronics, Inc. (hereinafter "Calrad") is believed to be a corporation organized and existing under the laws of State of California and having a principal place of business of 819 N. Highland Ave., Los Angeles, California 90038.

## Jurisdiction and Venue

8.      This Court has original subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) because this case arises under the Trademark Act of 1946, *as amended*, 15 U.S.C. § 1051 *et seq.*

9.      This Court also has original jurisdiction over the unfair competition claims herein, under the provisions of 28 U.S.C. § 1338(b), because these claims are joined with substantial and related claims under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq*.

10.     This Court has supplemental jurisdiction over the claims in this Complaint which arise under the common law of the State of Texas pursuant to 28 U.S.C. § 1367(a) since the State law claims are so related to the Federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

11.     Venue as to Defendant North American lies properly in this judicial District and Division under the terms of 28 U.S.C. §§ 1391(b) and (c) because Defendant North American is deemed to reside in this District since it is subject to personal jurisdiction of this Court at the time this suit was filed and because the claims and causes of action arose through acts of Defendant North American committed in this District and Division.

12.     Venue as to Defendants Starr and Rufo also lies properly in this judicial District and Division under the terms of 28 U.S.C. § 1391(b) because Defendants Starr and Rufo are deemed to reside in this District since they are subject to personal jurisdiction of this Court at the time this suit was filed and because the claims and causes of action arose through acts of Defendants Starr and Rufo committed in this District and Division.

13.     Venue as to Defendant Blue Whale also lies properly in this judicial District and Division under the terms of 28 U.S.C. §§ 1391(b), (c), and (d) because Defendant Blue Whale is deemed to reside in this District since it is subject to personal jurisdiction of this Court at the time this suit was filed, because the claims and causes of action arose through acts of Defendant Blue Whale committed in this district and division, and because Blue Whale is an alien corporation.

14.     Venue as to Defendant PMI lies properly in this judicial District and Division under the terms of 28 U.S.C. §§ 1391(b) and (c) because Defendant PMI is deemed to reside in this District since it is subject to personal jurisdiction of this Court at the time this suit was filed and because the claims and causes of action arose through acts of Defendant PMI committed in this District and Division.

15.     Venue as to Defendant Calrad lies properly in this judicial District and Division under the terms of 28 U.S.C. §§ 1391(b) and (c) because Defendant Calrad is deemed to reside in this District since it is subject to personal jurisdiction of this Court at the time this suit was filed and because the claims and causes of action arose through acts of Defendant Calrad committed in this District and Division.

16.     Personal jurisdiction is proper in this Court over all Defendants. Upon information and belief, all Defendants regularly sell products to numerous customers within this district, and have also sold infringing products to customers within this District and Division.

## Factual Allegations Common to All Counts

17.     This Complaint includes allegations relating to trade dress infringement, unfair competition and conspiracy.

18.     For many years Cable Electronics has been a premier designer and manufacturer of audio and video products (collectively "the Cable Electronics Products").  The Cable Electronics Products are electronic components which include originally designed electronic circuits and circuit boards.  The Cable Electronics Products include, but are not limited to model numbers "AV901 HD", "AV400", "CAT 5 HDTV Transmitter" and "CAT 5 HDTV Receiver".  The design and testing of the products has required Cable Electronics to expend substantial time, money and effort to ensure that each product achieves its desired function.

19.    The Cable Electronics Products have a distinctive appearance (the "Cable Electronics Trade Dress").  The distinctive appearance includes the type of enclosure box for each product, the arrangement of the external components and the colors and graphics on the enclosure box.  Cable Electronics has expended a great amount of time, money and effort to develop the distinctive and successful appearance of its products.

20.    Moreover, substantial time, money and effort have been expended by Cable Electronics to compile the specifications for its products.  Most of the specifications for the Cable Electronics Products are the result of extensive testing by Cable Electronics and are not merely industry standards.  The specifications for the products are included in the instruction manuals shipped with the products.

21.    In addition, Cable Electronics has expended substantial time, money and effort to develop confidential information related to the audio and video industry related to its products (the "Cable Electronics Confidential Information").  The Cable Electronics Confidential Information includes but is not limited to its customer identities, pricing and profit information and market trends in the industry related to product sales.  The confidential information has given Cable Electronics a significant commercial advantage over all competitors in the industry.

22.    Long before Defendants began their infringing activities and at least since January of 2004, Cable Electronics has marketed products using its unique and distinctive trade dress.

23.    Cable Electronics sells its products directly and through distributors.  Hundreds of thousands of products have been sold throughout Texas and the United States under the Cable Electronics Trade Dress totaling sales in the tens of millions of dollars.

24.     Growth and continuation of Cable Electronics' business depends in part upon the unique and distinctive nature of the Cable Electronics Trade Dress and on the good reputation and goodwill symbolized thereby.

25.     The high quality of products offered for sale by Cable Electronics under the Cable Electronics Trade Dress has also contributed to its success and good reputation.  Since the first use of the Cable Electronics Trade Dress, Cable Electronics has expended substantial energy, time, money and effort in advertising its goods sold in association with this trade dress.  Cable Electronics advertises and sells its products under its trade dress in many different ways, such as on the Internet, in printed brochures, catalogs and magazines and at numerous trade shows.  Over the years, Cable Electronics has expended over a million dollars to advertise its products under its trade dress throughout Texas and the United States.

26.     As a result of the distinctiveness or acquired distinctiveness of the Cable Electronics Trade Dress, the public recognizes Cable Electronics as the source of origin for audio and video products that are offered for sale under the Cable Electronics Trade Dress.

27.     Defendants North American, Starr, and Rufo are distributors for and competitors of Cable Electronics in the audio and video products industry.  Defendant Starr is the President of Defendant North American.  Defendant Rufo is the Vice President of Defendant North American.  Defendant North American distributes the audio and video products of others, including those of Defendants Starr and Rufo and those of Cable Electronics.  As the President and Vice President of Defendant North American, Defendants Starr and Rufo actively participate in all of Defendant North American's business activities and decisions.  As such, Defendants Starr and Rufo are personally liable and responsible for Defendant North American's activities as alleged in this Complaint.  On information and belief, Defendants North American, Starr, and

Rufo (collectively, the "North American Defendants") manufacture, distribute and/or import audio and video products and resell these products to consumers throughout the United States.

28.     Defendant Blue Whale manufactures and sells audio and video products that compete with those of Cable Electronics.  Blue Whale also sells custom products to the North American Defendants.  The products are substantially similar to those of Plaintiff in design and appearance.  On information and belief, Defendant Blue Whale manufactures, distributes and/or imports audio and video products and sells these products to consumers throughout the United States and in this judicial district.

29.     On information and belief, Defendant PMI is a wholesale importer of electronic and computer products that imports and sells to distributors products that compete with the products of Cable Electronics throughout the United States and in this judicial district.

30.     On information and belief, Defendant Calrad is a retailer of electronic and computer products that sells to consumers products that compete with the products of Cable Electronics throughout the United States and in this judicial district.

31.     Each Defendant has sold and continues to sell audio and/or video products, namely, amplifiers, distribution hubs and/or receivers, which are disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.

32.     On information and belief, in early 2007, Defendant Blue Whale began offering for sale products, namely "AV-901HD", "AV-400", "CAT5-TX" and "CAT5-RX".  In late 2007, Defendants North American, Starr, and Rufo began offering for sale products, namely "CT-9X1HD", "CT-400", "CT-CATTX" and "CT-CATRX".

33.     In early 2006, Defendant PMI began offering for sale products, namely "AV-400" amplifiers manufactured by Blue Whale.

34.     Defendant Calrad currently offers for sale products, namely "40-936B" and "40-939B", and 40-937B" amplifiers and "CAT 5 HDTV" receivers.

35.     On information and belief, all of Defendants' products described herein are of inferior quality to the Cable Electronics Products.

36.     Defendants' infringing trade dress is used in association with audio and/or video products, namely, amplifiers, distribution hubs and/or receivers.  These types of products are nearly identical to those offered by Cable Electronics under its trade dress.  As a result, the customers and the target market for goods sold by Cable Electronics and Defendants are identical or nearly identical.

37.     The advertising media used by Cable Electronics and the advertising media used by Defendants are very similar.  For example, both Defendants and Cable Electronics advertise their goods under their respective marks on the internet, at trade shows and through printed literature.

38.     Defendants' actions of using the Cable Electronics Trade Dress to sell, offer for sale, distribute and advertise audio and/or video products to consumers throughout Texas and the United States is likely to cause confusion and to cause mistake or to deceive consumers as to the source of origin of Defendants' products.

39.     Cable Electronics has notified the North American Defendants and Defendant Blue Whale that their actions constitute trade dress infringement.  Yet, the North American Defendants and Defendant Blue Whale have continued to use their infringing trade dress.  Therefore, the actions of the North American Defendants and Defendant Blue Whale are intentional and have been undertaken with full knowledge of Cable Electronics' rights in and to the Cable Electronics Trade Dress.

40.     As a distributor of the Cable Electronics Products, Defendant North American has had the opportunity to view and inspect each of the Cable Electronics Products and the information associated therewith.  The original circuit boards that are included in each of the Cable Electronics Products can easily be inspected by merely disassembling each product enclosure.

41.     All of the Defendants' products bearing the infringing trade dress are almost exact replicas of the Cable Electronics Products.  For example, the circuit board layouts and component values in Defendants' infringing products are nearly identical to those in the Cable Electronics Products.  An example of the circuit board for one of the Cable Electronics Products is shown below:


"AV400"

An example of the circuit board for one of the North American Defendants' infringing products is shown below:



"CT-400"

The selection and configuration of the electrical components and connections of the North American Defendants' "CT-400" product is almost identical to Cable Electronics' "AV400" product. The circuit board layouts and components used in the North American Defendants' other infringing products, as well as the infringing products of Defendant Blue Whale, Defendant PMI, and Defendant Calrad, are also nearly identical to the circuit board layouts and components for the other Cable Electronics Products.

42.     Instead of expending their own time, labor, skill and money to design the products of the North American Defendants and Defendant Blue Whale, they have merely mimicked the original designs of each of the Cable Electronics Products. The North American Defendants and Defendant Blue Whale have usurped the time, labor, skill and money that Cable Electronics has expended to choose and design its products and their appearance. By these actions, the North American Defendants and Defendant Blue Whale have misappropriated the "sweat equity" that Cable Electronics has gained through the design of the Cable Electronics Products.

43.     On information and belief, the North American Defendants and Defendant Blue Whale have also used the Cable Electronics Confidential Information to gain a competitive advantage without the expenditure of any significant resources. As a distributor, the North American Defendants have had access to the Cable Electronics Confidential Information

regarding the Cable Electronics Products.  The North American Defendants and Defendant Blue Whale incurred little or no expense in deriving the confidential information.  The North American Defendants and Defendant Blue Whale used the confidential information to, among other things, select which of the Cable Electronics Products to mimic and how to price the product of the North American Defendants and Defendant Blue Whale.

44.     Moreover, the North American Defendants have had access to and have misused the identities of Cable Electronics' customers.  On information and belief, when customers call the North American Defendants to inquire about the Cable Electronics Products, the North American Defendants systematically and intentionally redirect those customers to purchase the products of the North American Defendants instead of the Cable Electronics Products.

45.     On information and belief, Defendant Blue Whale and the North American Defendants conspired to engage in the acts of trade dress infringement and unfair competition as alleged herein.

46.     On information and belief, Defendant Blue Whale and Defendant PMI conspired to engage in the acts of trade dress infringement and unfair competition as alleged herein.

47.     The actions of Defendants constitute acts of trade dress infringement and unfair competition and have resulted and will continue to result in damage and irreparable harm to Cable Electronics.  Cable Electronics seeks full recovery of these damages as well as temporary, preliminary and permanent injunctive relief to restrain Defendants from further acts of trade dress infringement and unfair competition.

## Count I
## Federal Trade Dress Infringement
*(15 U.S.C. § 1125(a)(1)(A))*
*(Defendants North American, Starr, Rufo, and Blue Whale)*

48.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 47 as if fully set forth herein.

49.     For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade Dress.  The trade dress has a distinctive overall appearance of the products.  An example of a product bearing the Cable Electronics Trade Dress is shown below:



"AV901 HD"

50.     Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

51.     Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised under the Cable Electronics Trade Dress.  As a result, products sold under the Cable

Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

52.     The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

53.     The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

54.     The North American Defendants and Defendant Blue Whale have sold, and continue to sell, products, namely, an amplifier, that has been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.  A picture of the North American Defendants' infringing trade dress that is sold under the model number "CT-9X1HD" (which is substantially similar to Defendant Blue Whale's "AV-901HD") is shown below:



"CT-9X1HD"

55.     The actions of the North American Defendants and Defendant Blue Whale are in violation of 15 U.S.C. § 1125(a)(1)(A) because they have, on or in connection with any goods and services, namely audio and video products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of the North American Defendants and Defendant Blue Whale with Cable Electronics as to the source, origin, sponsorship or approval of the goods, services or commercial activities of the North American Defendants and Defendant Blue Whale.

56.     Adoption and use by the North American Defendants and Defendant Blue Whale of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

57.     Use by the North American Defendants and Defendant Blue Whale of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of the audio and video products the North American Defendants and Defendant Blue Whale.  The audio and video products of the North American Defendants and Defendant Blue Whale are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics.  The audio and video products of the North American Defendants and Defendant Blue Whale that are sold under the infringing trade dress directly compete with products of Cable Electronics.

58.     On information and belief, the North American Defendants and Defendant Blue Whale adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Use by the North American Defendants and Defendant Blue Whale of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause

injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

59.     Such acts of the North American Defendants and Defendant Blue Whale, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law.

**Count II**
**Federal Trade Dress Infringement**
*(15 U.S.C. § 1125(a)(1)(A))*
*(Defendants North American, Starr, Rufo, and Blue Whale)*

60.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 59 as if fully set forth herein.

61.     For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade Dress.  The trade dress has a distinctive overall appearance of the products.  An example of a product bearing the Cable Electronics Trade Dress is shown below:



"AV400"

62.     Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

63.     Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised under the Cable Electronics Trade Dress.  As a result, products sold under the Cable Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

64.     The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

65.     The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

66.     The North American Defendants and Defendant Blue Whale have sold, and continue to sell, products, namely, an amplifier, that has been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.  A picture of the North American Defendants' infringing trade dress that is sold under the model number "CT-400" (which is substantially similar to Defendant Blue Whale's "AV-400") is shown below:



"CT-400"

67.     The actions of the North American Defendants and Defendant Blue Whale are in violation of 15 U.S.C. § 1125(a)(1)(A) because they have, on or in connection with any goods and services, namely audio and video products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of the North American Defendants and Defendant Blue Whale with Cable Electronics as to the source, origin, sponsorship or approval of the goods, services or commercial activities of the North American Defendants and Defendant Blue Whale.

68.     Adoption and use by the North American Defendants and Defendant Blue Whale of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

69.     Use by the North American Defendants and Defendant Blue Whale of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of the audio and video products of the North American Defendants and Defendant Blue Whale.  The audio and video products of the North American Defendants and Defendant Blue Whale are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics.  The audio and video products of the North American Defendants and Defendant Blue Whale that are sold under the infringing trade dress directly compete with products of Cable Electronics.

70.     On information and belief, the North American Defendants and Defendant Blue Whale adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Use by the North American Defendants and Defendant Blue Whale of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause

injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

71.     Such acts of the North American Defendants and Defendant Blue Whale, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law.

## Count III
## Federal Trade Dress Infringement
*(15 U.S.C. § 1125(a)(1)(A))*
*(Defendants North American, Starr, Rufo, and Blue Whale)*

72.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 71 as if fully set forth herein.

73.     For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade Dress.  The trade dress has a distinctive overall appearance of the products.  An example of a product bearing the Cable Electronics Trade Dress is shown below:



"CAT 5 HDTV Transmitter"

74.     Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

75.     Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised under the Cable Electronics Trade Dress.  As a result, products sold under the Cable Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

76.     The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

77.     The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

78.     The North American Defendants and Defendant Blue Whale have sold, and continue to sell, products, namely, a transmitter, that has been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.  A picture of the North American Defendants' infringing trade dress that is sold under the model number "CT-CATTX" (which is substantially similar to Defendant Blue Whale's "CAT5-TX") is shown below:



"CT-CATTX"

79.     The actions of the North American Defendants and Defendant Blue Whale  are in

violation of 15 U.S.C. § 1125(a)(1)(A) because they have, on or in connection with any goods

and services, namely audio and video products, used in commerce, a false designation of origin

which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation,

connection or association of the North American Defendants and Defendant Blue Whale with

Cable Electronics as to the source, origin, sponsorship or approval of the goods, services or

commercial activities of the North American Defendants and Defendant Blue Whale.

80.     Adoption and use by the North American Defendants and Defendant Blue Whale

of the Cable Electronics Trade Dress is without permission or authorization from Cable

Electronics.

81.     Use by the North American Defendants and Defendant Blue Whale of the Cable

Electronics Trade Dress is likely to cause confusion as to the source of origin of the audio and

video products of the North American Defendants and Defendant Blue Whale.  The audio and

video products of the North American Defendants and Defendant Blue Whale are sold to the same

markets, are through the same channels of trade, are marketed through the same media, and are

targeted to the same consumers as those of Cable Electronics.  The audio and video products of the

North American Defendants and Defendant Blue Whale that are sold under the infringing trade dress directly compete with products of Cable Electronics.

82.     On information and belief, the North American Defendants and Defendant Blue Whale adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Use by the North American Defendants and Defendant Blue Whale of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

83.     Such acts of the North American Defendants and Defendant Blue Whale, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law.

**Count IV**
**Federal Trade Dress Infringement**
*(15 U.S.C. § 1125(a)(1)(A))*
*(Defendants North American, Starr, Rufo, and Blue Whale)*

84.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 83 as if fully set forth herein.

85.     For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade Dress.  The trade dress has a distinctive overall appearance of the products.  An example of a product bearing the Cable Electronics Trade Dress is shown below:



"CAT 5 HDTV Receiver"

86.    Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

87.    Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised under the Cable Electronics Trade Dress.  As a result, products sold under the Cable Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

88.    The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

89.    The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

90.    The North American Defendants and Defendant Blue Whale have sold, and continue to sell, products, namely, a receiver, that has been disguised in a trade dress that is

confusingly similar to the Cable Electronics Trade Dress.  A picture of the North American

Defendants' infringing trade dress that is sold under the model number "CT-CATRX" (which is

substantially similar to Defendant Blue Whale's "CAT5-RX") is shown below:



"CT-CATRX"

91.     The actions of the North American Defendants and Defendant Blue Whale  are in

violation of 15 U.S.C. § 1125(a)(1)(A) because they have, on or in connection with any goods

and services, namely audio and video products, used in commerce, a false designation of origin

which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation,

connection or association of the North American Defendants and Defendant Blue Whale with

Cable Electronics as to the source, origin, sponsorship or approval of the goods, services or

commercial activities of the North American Defendants and Defendant Blue Whale.

92.     Adoption and use by the North American Defendants and Defendant Blue Whale

of the Cable Electronics Trade Dress is without permission or authorization from Cable

Electronics.

93.     Use by the North American Defendants and Defendant Blue Whale of the Cable

Electronics Trade Dress is likely to cause confusion as to the source of origin of the audio and

video products of the North American Defendants and Defendant Blue Whale.  The audio and

video products of the North American Defendants and Defendant Blue Whale are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics.  The audio and video products of the North American Defendants and Defendant Blue Whale that are sold under the infringing trade dress directly compete with products of Cable Electronics.

94.     On information and belief, the North American Defendants and Defendant Blue Whale adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Use by the North American Defendants and Defendant Blue Whale  of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

95.     Such acts of the North American Defendants and Defendant Blue Whale, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law.

## Count V
## Federal Trade Dress Infringement
*(15 U.S.C. § 1125(a)(1)(A))*
*(Defendant PMI)*

96.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 95 as if fully set forth herein.

97.     For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade Dress.  The trade dress has a distinctive overall appearance of the products.

98.     Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

99.     Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised under the Cable Electronics Trade Dress.  As a result, products sold under the Cable Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

100.    The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

101.    The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

102.    Defendant PMI has sold, and continues to sell, products, namely, amplifiers, that have been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.  Defendant PMI has sold amplifiers bearing the infringing trade dress under the model number "AV-400".

103.    Defendant PMI's actions are in violation of 15 U.S.C. § 1125(a)(1)(A) because Defendant PMI has, on or in connection with any goods and services, namely audio products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of Defendant PMI with

Cable Electronics as to the source, origin, sponsorship or approval of Defendant PMI's goods, services or commercial activities.

104.     Defendant PMI's adoption and use of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

105.     Defendant PMI's use of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of Defendant PMI's audio products.  Defendant PMI's audio products are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics. Defendant PMI's audio products that are sold under the infringing trade dress directly compete with products of Cable Electronics.

106.     On information and belief, Defendant PMI adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Defendant PMI's use of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

107.     Such acts of Defendant PMI, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law.

**Count VI**
**Federal Trade Dress Infringement**
*(15 U.S.C. § 1125(a)(1)(A))*
*(Defendant Calrad)*

108.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 107 as if fully set forth herein.

109.    For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade Dress.  The trade dress has a distinctive overall appearance of the products.

110.    Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

111.    Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised under the Cable Electronics Trade Dress.  As a result, products sold under the Cable Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

112.    The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

113.    The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

114.    Defendant Calrad has sold, and continues to sell, products, namely, amplifiers, that have been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.  Defendant Calrad has sold amplifiers bearing the infringing trade dress under the model number "40-939B".  A picture of Calrad's infringing trade dress that is sold under the model number "40-939B" is shown below:



115.    Defendant Calrad's actions are in violation of 15 U.S.C. § 1125(a)(1)(A) because Defendant Calrad has, on or in connection with any goods and services, namely audio and video products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of Defendant Calrad with Cable Electronics as to the source, origin, sponsorship or approval of Defendant Calrad's goods, services or commercial activities.

116.    Defendant Calrad's adoption and use of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

117.    Defendant Calrad's use of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of Defendant Calrad's audio products.  Defendant Calrad's audio products are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics. Defendant Calrad's audio products that are sold under the infringing trade dress directly compete with products of Cable Electronics.

118.    On information and belief, Defendant Calrad adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated

with the Cable Electronics Trade Dress.  Defendant Calrad's use of the trade dress is therefore

willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause

injury to Cable Electronics and its property rights in the trade dress, and to cause confusion,

mistake, and deception.

119.     Such acts of Defendant Calrad, unless enjoined, will continue to cause substantial

damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no

adequate remedy at law.

**Count VII**
**Federal Trade Dress Infringement**
*(15 U.S.C. § 1125(a)(1)(A))*
*(Defendant Calrad)*

120.     Cable Electronics repeats and realleges the allegations of Paragraphs 1 through

119 as if fully set forth herein.

121.     For many years, Cable Electronics has continually marketed and sold audio and

video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade

Dress.  The trade dress has a distinctive overall appearance of the products.

122.     Cable Electronics has expended a substantial amount of time, money and

effort in continuously advertising and promoting its audio and video products under the

unique trade dress to the trade and public.

123.     Long before the actions complained of herein, Cable Electronics has acquired

a fine reputation because of the consistently high quality of products sold and advertised

under the Cable Electronics Trade Dress.  As a result, products sold under the Cable

Electronics Trade Dress are now recognized by the public and trade as originating solely

from Cable Electronics.

124.    The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

125.    The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

126.    Defendant Calrad has sold, and continues to sell, products, namely, amplifiers, that have been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.  Defendant Calrad has sold amplifiers bearing the infringing trade dress under the model number "40-936B".  A picture of Calrad's infringing trade dress that is sold under the model number "40-936B" is shown below:



127.    Defendant Calrad's actions are in violation of 15 U.S.C. § 1125(a)(1)(A) because Defendant Calrad has, on or in connection with any goods and services, namely audio and video products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of Defendant Calrad

with Cable Electronics as to the source, origin, sponsorship or approval of Defendant Calrad's goods, services or commercial activities.

128.    Defendant Calrad's adoption and use of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

129.    Defendant Calrad's use of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of Defendant Calrad's audio products.  Defendant Calrad's audio products are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics. Defendant Calrad's audio products that are sold under the infringing trade dress directly compete with products of Cable Electronics.

130.    On information and belief, Defendant Calrad adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Defendant Calrad's use of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

131.    Such acts of Defendant Calrad, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law.

### Count VIII
### Federal Trade Dress Infringement
*(15 U.S.C. § 1125(a)(1)(A))*
*(Defendant Calrad)*

132.    Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 131 as if fully set forth herein.

133.    For many years, Cable Electronics has continually marketed and sold audio and video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade Dress.  The trade dress has a distinctive overall appearance of the products.

134.    Cable Electronics has expended a substantial amount of time, money and effort in continuously advertising and promoting its audio and video products under the unique trade dress to the trade and public.

135.    Long before the actions complained of herein, Cable Electronics has acquired a fine reputation because of the consistently high quality of products sold and advertised under the Cable Electronics Trade Dress.  As a result, products sold under the Cable Electronics Trade Dress are now recognized by the public and trade as originating solely from Cable Electronics.

136.    The distinctive appearance of the Cable Electronics Trade Dress has come to be recognized by the consuming public and those in the industry, as an indicator of source. The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

137.    The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

138.    Defendant Calrad has sold, and continues to sell, products, namely, amplifiers, that have been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress.  Defendant Calrad has sold amplifiers bearing the infringing trade dress under the model number "40-937B".  A picture of Calrad's infringing trade dress that is sold under the model number "40-937B" is shown below:



139.    Defendant Calrad's actions are in violation of 15 U.S.C. § 1125(a)(1)(A) because Defendant Calrad has, on or in connection with any goods and services, namely audio and video products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of Defendant Calrad with Cable Electronics as to the source, origin, sponsorship or approval of Defendant Calrad's goods, services or commercial activities.

140.    Defendant Calrad's adoption and use of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

141.    Defendant Calrad's use of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of Defendant Calrad's audio products.  Defendant Calrad's audio products are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics. Defendant Calrad's audio products that are sold under the infringing trade dress directly compete with products of Cable Electronics.

142.    On information and belief, Defendant Calrad adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Defendant Calrad's use of the trade dress is therefore

willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause

injury to Cable Electronics and its property rights in the trade dress, and to cause confusion,

mistake, and deception.

143.    Such acts of Defendant Calrad, unless enjoined, will continue to cause substantial

damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no

adequate remedy at law.

**Count IX**
**Federal Trade Dress Infringement**
*(15 U.S.C. § 1125(a)(1)(A))*
*(Defendant Calrad)*

144.    Cable Electronics repeats and realleges the allegations of Paragraphs 1 through

143 as if fully set forth herein.

145.    For many years, Cable Electronics has continually marketed and sold audio and

video products under a unique and distinctive trade dress, namely, the Cable Electronics Trade

Dress.  The trade dress has a distinctive overall appearance of the products.

146.    Cable Electronics has expended a substantial amount of time, money and

effort in continuously advertising and promoting its audio and video products under the

unique trade dress to the trade and public.

147.    Long before the actions complained of herein, Cable Electronics has acquired

a fine reputation because of the consistently high quality of products sold and advertised

under the Cable Electronics Trade Dress.  As a result, products sold under the Cable

Electronics Trade Dress are now recognized by the public and trade as originating solely

from Cable Electronics.

148.    The distinctive appearance of the Cable Electronics Trade Dress has come to

be recognized by the consuming public and those in the industry, as an indicator of source.

The Cable Electronics Trade Dress is either inherently distinctive or has acquired secondary significance in the audio and video products industry and with the consuming public.

149. The Cable Electronics Trade Dress is not functional, but instead operates solely as an indicator of source of origin.

150. Defendant Calrad has sold, and continues to sell, products, namely, receivers, that have been disguised in a trade dress that is confusingly similar to the Cable Electronics Trade Dress. Defendant Calrad has sold receivers bearing the infringing trade dress under the model number "CAT 5 HDTV". A picture of Calrad's infringing trade dress that is sold under the model number "CAT 5 HDTV" is shown below to the left of the Cable Electronics Trade Dress:



151. Defendant Calrad's actions are in violation of 15 U.S.C. § 1125(a)(1)(A) because Defendant Calrad has, on or in connection with any goods and services, namely audio and video products, used in commerce, a false designation of origin which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of Defendant Calrad

with Cable Electronics as to the source, origin, sponsorship or approval of Defendant Calrad's goods, services or commercial activities.

152.    Defendant Calrad's adoption and use of the Cable Electronics Trade Dress is without permission or authorization from Cable Electronics.

153.    Defendant Calrad's use of the Cable Electronics Trade Dress is likely to cause confusion as to the source of origin of Defendant Calrad's audio products.  Defendant Calrad's audio products are sold to the same markets, are through the same channels of trade, are marketed through the same media, and are targeted to the same consumers as those of Cable Electronics. Defendant Calrad's audio products that are sold under the infringing trade dress directly compete with products of Cable Electronics.

154.    On information and belief, Defendant Calrad adopted the Cable Electronics Trade Dress with the specific intent of trading on the popularity, public recognition and goodwill associated with the Cable Electronics Trade Dress.  Defendant Calrad's use of the trade dress is therefore willful, fraudulent, deliberate, and malicious and has been committed with the intent to cause injury to Cable Electronics and its property rights in the trade dress, and to cause confusion, mistake, and deception.

155.    Such acts of Defendant Calrad, unless enjoined, will continue to cause substantial damage, irreparable harm and injury to Cable Electronics for which Cable Electronics has no adequate remedy at law

### Count X
### Texas Common Law Unfair Competition – Trade Dress Infringement
*(All Defendants)*

156.    Cable Electronics repeats and realleges the allegations in Paragraphs 1 through 155 as if fully set forth herein.

157.    The acts of Defendants complained of herein constitute unfair competition under the laws of the State of Texas.  Cable Electronics has taken numerous actions in order distinguish its products from those of others.  Specifically, Cable Electronics has adopted and continuously used the Cable Electronics Trade Dress in association with audio and video products in order to identify Cable Electronics as a sole source of origin of goods offered by Cable Electronics or under its surveillance and authority and distinguishes those goods from many others.

158.    Subsequent to the adoption and use of the Cable Electronics Trade Dress by Cable Electronics, Defendants began infringing the Cable Electronics Trade Dress by advertising and selling audio and/or video products which are confusingly similar to the Cable Electronics Trade Dress, throughout this judicial district and the United States.

159.    Such conduct by Defendants represents unfair competition because it is designed to and has caused confusion and mistake and deception of purchasers into believing that Defendants' goods are somehow sponsored by, made by or associated with Cable Electronics. The conduct further has caused damage to the reputation of Cable Electronics.

160.    On information and belief, Defendants have attempted to and have passed off goods of Defendants as those of Cable Electronics by using the Cable Electronics Trade Dress in association to offer for sale audio and video products to the exact same target markets and customers as those of Cable Electronics.

161.    Defendants' acts of unfair competition are fraudulent, deliberate, willful and malicious because Defendants were aware of Cable Electronics' adoption and use of the Cable Electronics Trade Dress before they began manufacturing and/or selling their own products and have been committed with the intent to cause injury to Cable Electronics.

162.    Unless Defendants are restrained from the acts complained of, Cable Electronics and the public will suffer irreparable harm, for which Cable Electronics has no adequate remedy at law.

**Count XI**
**Unfair Competition – Misappropriation**
*(Defendants North American, Starr, Rufo, and Blue Whale)*

163.    Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 162 as if fully set forth herein.

164.    Cable Electronics has expended extensive time, labor, skill and money to create each of the Cable Electronics Products.  Each of the Cable Electronics Products has been designed and tested exclusively by Cable Electronics.  Moreover, each of the Cable Electronics Products bears a unique trade dress.  As a result of Cable Electronics' efforts, it has created high quality products which now enjoy an excellent reputation in the industry.  Additionally, Cable Electronics has expended extensive time, labor, skill and money to study the audio and video products industry to analyze consumer demand to determine which products to offer for sale and at what prices.

165.    The North American Defendants and Defendant Blue Whale are distributors for and competitors of Cable Electronics in the audio and video products industry.  Defendant North American is a distributor of both the Cable Electronics Products and the infringing products of the North American Defendants and Defendant Blue Whale.  On information and belief, the North American Defendants and Defendant Blue Whale have usurped the time, labor, skill and money that Cable Electronics incurred to create and test the Cable Electronics Products by making products, namely, the North American Defendants' "CT-9X1HD", "CT-400", "CT-CATTX" and "CT-CATRX" and Defendant Blue Whale's  "AV-901HD", "AV-400", "CAT5-TX" and "CAT5-RX", that are almost exact replicas of the Cable Electronics Products.

On information and belief, instead of expending the time, labor, skill and money to design and test their own products, the North American Defendants and Defendant Blue Whale merely mimicked the design and appearance of the Cable Electronics Products and the product specifications included in the manuals from the products.

166.    The North American Defendants and Defendant Blue Whale have used the Cable Electronics Confidential Information to mimic the Cable Electronics Products and choose which products to mimic.  The North American Defendants and Defendant Blue Whale further used the Cable Electronics Confidential Information to identify and solicit customers of Cable Electronics by advertising the Cable Electronics Products as "bait" only to "switch" the customers to their own infringing products sold at a lower price.  The conduct of the North American Defendants and Defendant Blue Whale has provided them with an unfair competitive advantage of allowing the North American Defendants and Defendant Blue Whale to offer for sale products that are in high demand and that directly compete with the Cable Electronics Products at lower prices than Cable Electronics because the North American Defendants and Defendant Blue Whale have not incurred the expenses incurred by Cable Electronics in developing the confidential information.

167.    On information and belief, the infringing products of the North American Defendants and Defendant Blue Whale are of inferior quality.  Sales of the infringing products by the North American Defendants and Defendant Blue Whale in place of the Cable Electronics Products have therefore caused irreparable harm to Cable Electronics' reputation and goodwill.

168.    The conduct of the North American Defendants and Defendant Blue Whale  has also caused Cable Electronics to suffer substantial commercial damage.

169.    Unless the North American Defendants and Defendant Blue Whale are restrained from the acts complained of, Cable Electronics and the public will suffer further damage and irreparable harm, for which Cable Electronics has no adequate remedy at law.

### Count XII
### Conspiracy
*(Defendants North American, Starr, Rufo, and Blue Whale)*

170.    Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 169 as if fully set forth herein.

171.    On information and belief, the North American Defendants and Defendant Blue Whale had a meeting of the minds on the course of action to create or design the infringing products of the North American Defendants and Defendant Blue Whale, namely, the North American Defendants' "CT-9X1HD", "CT-400", "CT-CATTX" and "CT-CATRX" and Defendant Blue Whale's  "AV-901HD", "AV-400", "CAT5-TX" and "CAT5-RX".

172.    On information and belief, the North American Defendants and Defendant Blue Whale have committed an unlawful overt act to create or design their infringing products and/or have lawfully created or designed their infringing products through unlawful means.

173.    On information and belief, the North American Defendants and Defendant Blue Whale had a specific intent to agree to unlawfully create or design their infringing products and/or to lawfully create or design their infringing products through unlawful means.

174.    The actions of the North American Defendants and Defendant Blue Whale are the proximate cause of damages suffered by Cable Electronics.

175.    Unless the North American Defendants and Defendant Blue Whale are restrained from the acts complained of, Cable Electronics and the public will suffer further damage and irreparable harm, for which Cable Electronics has no adequate remedy at law.

## Count XIII
## Conspiracy
*(Defendants Blue Whale and PMI)*

176.    Cable Electronics repeats and realleges the allegations of Paragraphs 1 through 175 as if fully set forth herein.

177.    On information and belief, Defendant PMI and Defendant Blue Whale had a meeting of the minds on the course of action to create or design their infringing products, namely, Defendant PMI's "AV-400" and Defendant Blue Whale's "AV-400".

178.    On information and belief, Defendant PMI and Defendant Blue Whale have committed an unlawful overt act to create or design their infringing products and/or have lawfully created or designed their infringing products through unlawful means.

179.    On information and belief, Defendant PMI and Defendant Blue Whale had a specific intent to agree to unlawfully create or design their infringing products and/or to lawfully create or design their infringing products through unlawful means.

180.    The actions of Defendant PMI and Defendant Blue Whale are the proximate cause of damages suffered by Cable Electronics.

181.    Unless Defendant PMI and Defendant Blue Whale are restrained from the acts complained of, Cable Electronics and the public will suffer further damage and irreparable harm, for which Cable Electronics has no adequate remedy at law.

## Demand for Jury Trial

182.    Pursuant to Rule 38(b), Fed. R. Civ. P., Cable Electronics demands a jury trial on all issues so triable.

## Prayer

WHEREFORE, Cable Electronics respectfully requests:

a.      That, pursuant to 15 U.S.C. § 1116 Defendants, together with their subsidiaries and affiliates, agents, servants and employees and all those in privy, concert or participation with them, be immediately, preliminary and perpetually enjoined from:

(1)     Using Defendants' infringing trade dress, as described herein, or any other reproduction, counterfeit, copy or colorable imitation of the Cable Electronics Trade Dress in connection with the advertising, offering for sale, or sale of goods the same or similar to those offered by Cable Electronics;

(2)     Using Defendants' infringing trade dress, or any other reproduction, counterfeit, copy or colorable imitation of the Cable Electronics Trade Dress in any manner likely to cause confusion, to cause mistake or to deceive;

(3)     Selling or passing off, inducing, or enabling others to sell or pass off any goods used in the audio and video industry and other related industries or any other goods similar to those offered by Cable Electronics;

(4)     Committing any acts, including, but not limited to marketing activities, which are calculated to cause purchasers to believe that Defendants' goods are Cable Electronics' goods in whole or in part unless they are entirely such;

(5)     Otherwise competing unfairly with Cable Electronics in any manner, including, but not limited to, infringing usage of the Cable Electronics Trade Dress;

(6)     Selling, offering for sale, manufacturing or importing any of Defendants' infringing products, as identified herein,  replicated from any of the Cable Electronics Products;

(7)     Destroying, altering, disposing of, concealing, tampering with or in any manner secreting any and all business records, invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the design, production, advertising, sale or offer for sale of any goods bearing Defendants' infringing trade dress and all other dress that is confusingly similar to the Cable Electronics Trade Dress; and

(8)     From attempting, causing or assisting in any of the above-described acts to occur.

b.      That, pursuant to 15 U.S.C. § 1118, after final hearing Defendants are required to deliver up for destruction or, alternatively, to obliterate all infringing trade dress on, their entire inventory of infringing items, including but not limited to products, signs, labels, packaging,

advertisements, video and audio recordings, computer graphics files, internet web page files, literature, correspondence, invoices, catalogs, molds and matrices and any other material in their position bearing Defendants' infringing trade dress or any other dress confusingly similar to the Cable Electronics Trade Dress;

      c.      That Defendants are required to contact each person who has purchased from them any infringing goods under Defendants' infringing trade dress and notify that person that the goods were not genuine goods offered by Cable Electronics or under its surveillance or control;

      d.      That Defendants be required to contact each person who has received any of the infringing goods under Defendants' infringing trade dress and notify that person that the goods are not associated with or offered for distribution by Cable Electronics or under its surveillance or control;

      e.      That Defendants be required to file with the Court and serve on Cable Electronics within thirty (30) days after service on Defendants of such injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

      f.      That upon ten (10) days after notice, for the next five years, Cable Electronics be permitted to inspect and audit Defendants' inventory and all business records to determine compliance with the injunction issued by the Court;

      g.      That, pursuant to 15 U.S.C. § 1117, the Court hold that this is an exceptional case and award Cable Electronics its attorneys' fees, Defendants' Profits, damages sustained by Cable Electronics and its costs;

       h.       That Cable Electronics be awarded monetary damages as a result of Defendants' engagement in unfair competition and conspiracy.

       i.       That Defendants be required to pay Cable Electronics prejudgment interest on the amount awarded and post judgment interest until paid, all at the maximum lawful rate;

       j.       That Cable Electronics be awarded one million dollars ($1,000,000) in punitive damages; and

       k.       That Cable Electronics have such other and further relief as the Court deems just and proper.

Dated:  December 3, 2009           Respectfully submitted,


 s/George R. Schultz       
George R. Schultz
Texas State Bar No. 17837500
russ.schultz@grspc.com
Nicole R. Marsh
Texas State Bar No. 24044653
nicole.marsh@grspc.com

SCHULTZ & ASSOCIATES, P.C.
5400 LBJ Freeway, Suite 1200
Dallas, Texas 75240
(214) 210-5940 telephone
(214) 210-5941 facsimile

ATTORNEYS FOR PLAINTIFF
CABLE ELECTRONICS, INC

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing Second Amended Complaint was served upon

the persons listed below in the manner indicated on December 3, 2009.

Martin J. Sweeney                                                            ***Via First Class Mail***
Cozen O'Conner                                                              ***Postage Prepaid***
1717 Main Street. Suite 2300
Dallas, Texas 75201
(214) 462-3024 (telephone)
(214) 462-3299 (facsimile)

Theodore C. Anderson                                                   ***Via First Class Mail***
W.D. Masterson                                                             ***Postage Prepaid***
John H. Crouch, IV
Robert M. Behrendt
Kilgore & Kilgore
3109 Carlisle Street
Dallas, Texas 75204
(214) 969-9099 (telephone)
(214) 953-0133 (facsimile)

Stephen E. Feldman                                                       ***Via First Class Mail***
Kalpana Nagampalli                                                       ***Postage Prepaid***
Feldman Law Group
12 East 41st Street
New York, New York
(212) 532-8585 (telephone)
(212) 532-8598 (facsimile)


   s/George R. Schultz
George R. Schultz