## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| CABLE ELECTRONICS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| NORTH AMERICAN CABLE | § | |
| EQUIPMENT, INC., | § | |
| | § | CIVIL ACTION NO. 3:08-CV-0433-M |
| AARON STARR, D/B/A | § | |
| CABLETRONIX, | § | |
| | § | |
| LAWRENCE RUFO, D/B/A | § | |
| CABLETRONIX, | § | |
| | § | |
| BLUE WHALE LIMITED, and | § | |
| | § | |
| PMI TRADING, INC. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Blue Whale Limited's Motion and Supplemental Motion

to Dismiss for Lack of Personal Jurisdiction [Docket Entry #59 and #95].  For the reasons stated

below, the Motions are **DENIED**.

*Background*

Plaintiff Cable Electronics, Inc., a Texas corporation, designs and manufactures audio

and video products.  At issue in this case are products that transmit video signals to monitors

displaying advertisements in retail stores.  Defendant North American Cable Equipment, Inc.

("NACE"), a Pennsylvania corporation, distributes Cable Electronics' products and sells

products obtained from other sources.  Cable Electronics alleges that NACE has begun selling

products that closely resemble those made by Cable Electronics, which are supplied to NACE by

Blue Whale Limited, a Hong Kong company, for ultimate sale in the United States. Cable

Electronics filed suit against NACE and its officers, Aaron Starr and Lawrence Rufo, alleging

trade dress violations, unfair competition by trade dress infringement, and unfair competition by

misappropriation. Cable Electronics later amended its Complaint to add Blue Whale as a

Defendant and to claim conspiracy between Blue Whale and PMI Trading, Inc. ("PMI"). Blue

Whale moved to dismiss for lack of personal jurisdiction.

*Legal Standard*

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident

defendant if the long-arm statute of the forum confers personal jurisdiction over that defendant,

and the exercise of such jurisdiction by the forum is consistent with due process.[1] The Texas

long-arm statute reaches to the limits of due process, and therefore a court need only determine

whether the exercise of personal jurisdiction over the moving defendant is consistent with due

process.[2] The due process clause permits the exercise of personal jurisdiction over a nonresident

defendant when (1) that defendant has purposefully availed itself of the benefits and protections

of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise

of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial

justice."[3]

When personal jurisdiction is challenged without an evidentiary hearing, the party

seeking to invoke jurisdiction must make a *prima facie* showing of jurisdiction, with the Court

resolving all disputed facts in favor of jurisdiction.[4] When determining whether the plaintiff has

---

[1] *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999); *Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990)).
[2] *Guardian Royal Exch. Assur., Ltd. v. English China Clays P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).
[3] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).
[4] *See Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

made a *prima facie* case, the Court may consider any affidavits, interrogatories, deposition

testimony, or any other recognized discovery method,[5] not considering conclusory allegations.[6]

There are two categories of personal jurisdiction, general and specific.  General

jurisdiction exists when a defendant's contacts with the forum state are "continuous and

systematic," allowing the Court to exercise jurisdiction over that defendant for causes of action

unrelated to the defendant's connections to the state.[7]  For specific jurisdiction to exist, the

plaintiff's claim must arise out of or relate to those contacts.[8]  In determining whether specific

jurisdiction exists, the Court must conduct the minimum contacts analysis separately for each

cause of action.[9]

If the nonmovant can establish minimum contacts, the burden shifts to the movant to

make a compelling case that the exercise of jurisdiction would violate traditional notions of fair

play and substantial justice.[10]  In making this determination, the court examines "(1) the

defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and

effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5)

the shared interest of the several states in furthering fundamental substantive social policies."[11]

It is rare to find that an assertion of jurisdiction is unfair after minimum contacts have been

shown.[12]

---

[5] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

[6] *Panda Brandywine*, 253 F.3d at 869.

[7] *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 336 (5th Cir. 1999); s*ee also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.9 (1984).

[8] *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).

[9] *See McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Stelax Indus. Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *2 (N.D. Tex. Mar. 25, 2004).

[10] *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir. 1999) (citation omitted).

[11] *Berry v. Lee*, 428 F. Supp. 2d 546, 557 (N.D. Tex. 2006) (citing, *inter alia*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

[12] *See Johnston v. Multidata Sys. Int'l Corp*., 523 F.3d 602, 615 (5th Cir. 2008).

*Analysis*

1.  General Personal Jurisdiction

Blue Whale does not have the continuous and systematic contacts in Texas necessary to support general jurisdiction.  Blue Whale is a Hong Kong company, which manufactures its products and has its nerve center in Hong Kong.  Blue Whale does not have an office in Texas, is not registered to do business in Texas, has no bank account in Texas, has no real or personal property in Texas, has never entered into a contract in Texas, and has no employees or agents in Texas.[13]  Although Blue Whale operates a website, it is entirely passive.[14]  Blue Whale sold thousands of products to PMI and shipped its products to Access OEM, both of which are Houston companies.[15]  Blue Whale also sells its products to several distributors throughout the United States, some of which advertise Blue Whale's products on their websites.[16]  However, because Blue Whale has no business presence in Texas, the Court does not find the extensive contacts necessary to find general jurisdiction over Blue Whale.[17]

2.  Specific Personal Jurisdiction

Cable Electronics advances a "stream of commerce" theory to support personal jurisdiction over Blue Whale.  The Fifth Circuit has held that "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its

---

[13] *See, e.g.*, *Ashton v. Knight Transp. Co.*, No. 3:09-CV-0759-B, 2010 WL 963217, at *2 (N.D. Tex. Mar. 16, 2010) (considering similar factors and concluding that general jurisdiction did not exist).

[14] *See McFadin*, 587 F.3d at 762; *HEI Res., Inc. v. Venture Research Inst.*, No. 3:09-CV-403-M, 2009 WL 2634858, at *2 (Aug. 26, 2009) ("[W]here a defendant has established a 'passive website' that does nothing more than advertise on the Internet, exercising personal jurisdiction over such a website based on Internet-related contacts alone is inappropriate.") (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

[15] Dkt. No. 80 at 51-53, 110.

[16] *Id.* at 105-45.

[17] *See Johnston*, 523 F.3d at 612 ("[N]either [defendant's] sale of approximately $140,000 worth of goods in a five-year time period to Texas customers nor its employees' occasional travels to Texas to service equipment or attend trade conventions are sufficient to justify exercising general jurisdiction.").

way into the forum state while still in the stream of commerce."[18]  A defendant is amenable to

suit if it knowingly benefits from a particular state's market for its products.[19]  "[J]urisdiction

may attach both to manufacturers who supply their own delivery systems and to those that make

use of the distribution systems of third parties."[20]  Personal jurisdiction does not exist if a sale to

a distributor is an isolated occurrence, and a court should consider whether the defendant sought

to serve a national market and took steps to limit the scope of the product's distribution.[21]

An e-mail exchange between PMI and Blue Whale began on September 1, 2005 and

continued until August 10, 2009.  During this time, Blue Whale sent approximately 450 e-mails

to PMI and PMI sent approximately 550 e-mails to Blue Whale regarding its purchase of Blue

Whale's products.[22]  Blue Whale sold PMI over 12,000 units of various products, the total value

of which exceeds $130,000.[23]

Blue Whale sold PMI approximately 350 units of the AV-400 amplifier, which Cable

Electronics alleges infringes its trade dress rights.[24]  Blue Whale delivered these units free on

board Hong Kong,[25] but Blue Whale's signed invoices identify PMI's Houston address as the

destination for its products.[26]  Blue Whale's records show the AV-400 amplifier "shipping from"

Hong Kong and "shipping to" Houston.[27]  Blue Whale admits it either shipped or caused to be

---

[18] *Luv N' care*, 438 F.3d at 470 (citations omitted); *see also Aerotech Holdings, Inc. v. Alliance Aerospace Eng'r*, 650 F. Supp. 2d 594, 600 (N.D. Tex. 2009).

[19] *See Luv N' care*, 438 F.3d at 470; *Pinnacle Label, Inc. v. Spinnaker Coating, LLC*, No. 3:09-CV-0950-D, 2009 WL 3805798, at *4 (N.D. Tex. Nov. 12, 2009).

[20] *Luv N' care*, 438 F.3d at 471.

[21] *See Purcel v. Advanced Bionics Holding Corp.*, No. 3:07-CV-1777-M, 2008 WL 4790998, at *2 (N.D. Tex. Oct. 27, 2008).

[22] Dkt. No. 80 at 52-53.

[23] *Id.* at 52-72.

[24] *Id.* at 51-52.

[25] When an item is delivered free on board (abbreviated "F.O.B.") the place of shipment, the seller must ship the goods at the place of shipment and bear the risk and expense of putting them into the possession of the carrier.  *See* U.C.C. § 2-319.

[26] Dkt. No. 80 at 42-52.

[27] *Id.* at 55-56.

shipped, to Houston, the allegedly infringing AV-400 amplifier.[28]  Blue Whale also sent samples and parts directly to PMI.[29]  Given the "regularity and quantity of shipments and the presence of a destination address on defendant's invoices," the F.O.B. shipping term is not dispositive of the issue of jurisdiction in Texas.[30]

Blue Whale sold products in the stream of commerce for resale in Texas, and throughout the United States, without restricting the potential geographic distribution of its products.[31]  Blue Whale sold its products to NACE and approximately ten other customers in the United States, several of which distributed its products on their websites.[32]  Blue Whale selected NACE in particular to secure distribution for its products in the United States.[33]

This case is distinguishable from those in which a foreign manufacturer sells its goods to a foreign distributor, which then re-sells its goods in an American market without the manufacturer's knowledge.[34]  Blue Whale knew that its products would reach the Texas market specified on its invoices.[35]

Based on the relevant facts, the Court has personal jurisdiction over Blue Whale as to the trade dress infringement and related unfair competition claims.

---

[28] *Id.* at 52.

[29] *Id.* at 38-41.

[30] *See Luv N' care*, 438 F.3d at 472 n.11.

[31] Dkt. No. 80 at 34.  *See Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199-200 (5th Cir. 1980) (finding jurisdiction where defendant did not attempt to limit the states in which its products could be sold, but rather "had every reason to believe its product would be sold to a nation-wide market, that is, in any or all states").

[32] *Id.* at 97, 110. The evidence does not establish whether distributors other than PMI and NACE sold Blue Whale's allegedly infringing products.

[33] *Id.* at 93.

[34] *See, e.g., Jones v. Oriental Trading Co.*, No. H-03-3392, 2005 WL 1923585, at *4 (S.D. Tex. Aug. 10, 2005); *compare Un. Galvanizing, Inc. v. Imperial Zinc Corp.*, No. H-08-0551, 2008 WL 4746334, at *9 (S.D. Tex. Oct. 27, 2008) (finding no personal jurisdiction when there was no evidence of zinc producer's intent to avail itself of a wide market or awareness that zinc would be sold or shipped to Texas).

[35] *See Luv N' care*, 438 F.3d at 471 ("It is eminently foreseeable that Insta-Mix's products would reach the market indicated on the company's invoices.").

The Court has personal jurisdiction over Blue Whale as to Cable Electronics' unfair competition by misappropriation and related conspiracy claims. The elements of unfair competition by misappropriation are:

> (i) the creation by plaintiff of a product through extensive time, labor, skill and money; (ii) the use of that product by defendant in competition with plaintiff, thereby giving the defendant a special competitive advantage because he was burdened with little or none of the expense incurred by plaintiff in the creation of the product; and (iii) commercial damage to plaintiff.[36]

Under the "effects test," first formulated in *Calder v. Jones*,[37] "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."[38] Cable Electronics alleges that Blue Whale mimicked its product designs and sold inexpensive replicas, thereby usurping the time, labor, skill and money that Cable Electronics incurred to create and test its products. Because Blue Whale purposely directed the sale of its allegedly infringing products at Texas, while availing itself of the benefits of the Texas market for its products, the Court has jurisdiction over the unfair competition by misappropriation claim.[39] The same contacts establish a *prima facie* case for jurisdiction with respect to the conspiracy claim, which alleges that Blue Whale and the Defendants conspired to create or design infringing products.[40]

---

[36] *Alcatel USA, Inc. v. DGI Techs.*, 166 F.3d 772, 788 (5th Cir. 1999) (citing *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied)).
[37] 465 U.S. 783, 789-90 (1984).
[38] *See Eagle Metal Prods. v. Keymark Enters.*, 651 F. Supp. 2d 577, 586 (N.D. Tex. 2009).
[39] *See Eagle Metal*, 651 F. Supp. 2d at 589, 595; *see also McFadin*, 587 F.3d at 763 (finding personal jurisdiction over tort claims against defendants who purposely directed the sale of their goods, through a representative, in Texas, while availing themselves of the benefits of the Texas market).
[40] *See Eagle Metal*, 651 F. Supp. 2d at 591; *see also Stelax*, 2004 WL 733844, at *6 ("[T]o the extent Plaintiff's conspiracy claim is premised on one of the torts for which Plaintiff has established the requisite minimum contacts, the same contacts establish a prima facie case for jurisdiction with respect to Plaintiff's claim of conspiracy.").

Because a foreign defendant is involved, the Court must "consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by the [forum state]."[41]  The interests of foreign nations,

> as well as the Federal interest in [the] Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.  "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."[42]

In *Tiemann v. Spin Master Ltd.*, the court found personal jurisdiction over Swan Plastic Products (HK) Ltd. ("Swan"), which was incorporated and had its principal place of business in Hong Kong and manufactured water slides in mainland China.[43]  Swan intended for its slides to be sold in the United States through Sam's Club, which had several Texas locations.[44]  The burden for Swan to defend suit in Texas was outweighed by the interest of Texas in ensuring the safety of products that are manufactured abroad for sale in Texas, the plaintiffs' interest in effective relief and the burden of the Plaintiff seeking redress in Hong Kong or China, and the interest of the several states in preventing foreign manufacturers from avoiding personal jurisdiction for products intentionally sold in the United States.[45]

Although Blue Whale will be burdened by traveling from Hong Kong, that burden is outweighed by the countervailing interests of adjudicating this suit in Texas.  Cable Electronics is a Texas corporation, and hundreds of Blue Whale's allegedly infringing products were shipped to and sold in Texas.  Cable Electronics has a strong interest in litigating alleged violations of federal trademark laws in the United States.  All parties other than Blue Whale are based in the

---

[41] *Johnston*, 523 F.3d at 615 (quoting *Asahi Metal Indus. Co. v. Superior Court of Ca.*, 480 U.S. 102, 115 (1987)) (emphasis in original).
[42] *Id.* (internal citation omitted).
[43] No. C-07-311, 2008 WL 2096958, at *1, 8 (S.D. Tex. May 15, 2008).
[44] *Id.* at *7.
[45] *Id.*

United States, and they have an interest in this suit being resolved in one case in the United States.[46] States have an interest in ensuring that a foreign corporation may not intend for its products to be sold in the United States, yet avoid personal jurisdiction for alleged violations of federal trademark laws.

The mere burden of defending suit in the United States is commonly found insufficient to defeat jurisdiction.[47] If Blue Whale has violated the laws of the United States, then fair play justifies holding it responsible in the United States.[48] Blue Whale initiated a relationship with several American distributors and sold hundreds of allegedly infringing units in Texas, for which it was compensated.[49] Because Blue Whale has not shown that this burden outweighs the other interests described above, maintenance of Plaintiff's suit against Blue Whale in Texas does not offend traditional notions of fair play and substantial justice.

*Conclusion*

For the reasons stated above, Blue Whale's Motion and Supplemental Motion to Dismiss for Lack of Personal Jurisdiction are **DENIED**. However, the Court does not find that Blue Whale acted in bad faith in filing its Motion and Supplemental Motion, and accordingly **DENIES** Cable Electronics' request for fees and costs for conducting jurisdictional discovery.[50]

---

[46] *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

[47] *Nidec Corp. v. LG Innotek Co., Ltd.*, No. 6:07-CV-108, 2008 WL 7048882, at *8 (E.D. Tex. Dec. 11, 2008); *see, e.g.*, *Nichols v. YJ USA Corp.*, No. 3:06-CV-02366-L, 2008 WL 4191515, at *4 (N.D. Tex. Sept. 10, 2008) (exercising personal jurisdiction over an Asian company whose employees and records were located in China and Malaysia); *see also Gulf Consol. Servs., Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1074 (5th Cir. 1990) ("The burden on a defendant to have to defend suit in a foreign country may nonetheless be justified if the interests of the plaintiff and the forum are of sufficient importance."); *see generally World-Wide Volkswagen*, 444 U.S. at 294 ("[P]rogress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome.") (quoting *Hanson v. Denckla*, 357 U.S. 235, 250-251 (1958)).

[48] *See Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 716 (5th Cir. 1999).

[49] *See generally Gulf*, 898 F.2d at 1075 ("[W]hen viewed in light of this brisk [sales] activity, any unfairness to [defendant] in having to defend a claim in Texas which arises out of one of those sales is relatively insignificant.").

[50] *See Quantum Catalytics, LLC v. Ze-Gen, Inc.*, No. H-07-2619, 2008 WL 5102272, at *2 (S.D. Tex. Dec. 1, 2008) ("[T]he imposition of sanctions follows the court's specific finding of bad faith, a high threshold.").

**SO ORDERED**.

April 15, 2010.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**